UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| ANDREW K. MEISEL, *et al.*, | No. C 10-01786 LB |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS'** |
| v. | **MOTION TO SET ASIDE ENTRY OF** |
| MARK KAUFMAN, *et al.*, | **DEFAULT [ECF No. 29]** |
| Defendants. | |

## I. INTRODUCTION

On April 26, 2010, Plaintiffs – a group of investors comprised of the Meisel and Laxineta families and Gerald Hart – filed this lawsuit alleging securities fraud, RICO violations, and related state claims against Defendants Mark Kaufman and four corporations with which Mr. Kaufman is involved: Kaufman Properties; Mark Alan Kaufman Properties; Inc.; Mark Kaufman Properties, Inc.; and Midland MAK Management, LLC. *See* Complaint, ECF No. 1.[1] Plaintiffs claim fraud by Kaufman related to their $2.7 million investment in limited liability companies and limited partnerships that in turn invested in real property in California, Delaware, Arizona, and Nevada.

On June 1, 2010, Plaintiffs filed proofs of service showing service on the Defendants as follows, which resulted in the following due dates for responsive pleadings:

---

[1] Court filings in this order are identified by their docket number on the Electronic Case Filing ("ECF") docket sheet.

ORDER (C 10-01786 LB)

| Defendant | Means of Service | Service Date | Responsive Pleading Date |
|---|---|---|---|
| Midland MAK, LLC | certified mail to authorized agent | April 27, 2010 | May 28, 2010 |
| Mark Alan Kaufman Properties, Inc.; Mark Kaufman Properties, Inc. | personal service to authorized agent | April 28, 2010 | May 29, 2010 |
| Mark Kaufman individually and d/b/a Kaufman Properties | substitute service | April 30, 2010 | June 1, 2010 |

*See* ECF Nos. 5-8.

On June 2, 2010, Plaintiffs asked for entry of default against all Defendants. ECF Nos. 10, 13, 19, 22. The Clerk of the Court entered default as to all Defendants on June 8, 2010. ECF No. 25.

On June 20, 2010, Defendants moved to vacate the entries of default, arguing that good cause exists under Federal Rule of Civil Procedure 55(c). ECF Nos. 29, 30. They also filed their proposed answer. ECF No. 26. Because Defendants have shown that their failure to file a responsive pleading was not due to culpable conduct, that they have a meritorious defense, and that Plaintiffs will not be prejudiced if the Court vacates the defaults, the Court **GRANTS** Defendants' Motion.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(c), a court may set aside an entry of default for "good cause." *See United States v. Mesle*, No. 09-55353, slip op. 11211, 11219 (9th Cir. Aug. 4, 2010). To determine whether a defendant has shown good cause to justify vacating entry of default, a court considers three factors: (1) whether the defendant engaged in culpable conduct that led to the default; (2) whether the defendant had a meritorious defense; and (3) whether reopening the default would prejudice plaintiff. *See id. (citing Franchise Holding II, LLC v. Huntington Rests. Group., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004)). This standard is disjunctive, meaning, the court may deny the request to vacate default if any of the three factors is true. *See id. (citing Franchise Holding II*, 375 F.3d at 925). "Crucially, however, '[j]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Id. (quoting Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

ORDER (C 10-01786 LB)    2

1    The standard is the same standard used to determine whether a default judgment should be set
2 aside under Federal Rule of Civil Procedure 60(b), except that in the Rule 55(c) context, courts have
3 greater discretion and can apply the standard more liberally to grant relief from entry of judgment
4 because there is no interest in the finality of the judgment. *See id.* at 11219 n.1 (citations omitted);
5 *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001); *Hawaii Carpenters' Trust
6 Fund v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986); *Mendoza v. Wight Vineyard Mgmt*, 783 F.2d 941,
7 945 (9th Cir. 1986). When considering whether to vacate a default under Rule 55(c), the court's
8 "underlying concern . . . is to determine whether there is some possibility that the outcome of the
9 suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters' Trust
10 Fund*, 794 F.2d at 513.

11   As the party seeking to set aside entry of default, Defendants bear the burden of showing good
12 cause under this test. *Id*. To ensure that cases are decided on the merits whenever possible, the
13 court resolves any doubt regarding whether to grant relief in favor of vacating default. *O'Connor v.
14 Nevada*, 27 F.3d 357, 363 (9th Cir. 1994).

### III.  DISCUSSION

#### A.  Defendants' Culpability

17   "'A defendant's conduct is culpable if he has received actual or constructive notice of the filing
18 of an action and *intentionally* failed to answer.'" *Mesle*, No. 09-55353, slip op. at 11221 (*quoting
19 TCI*, 244 F.3d at 697). "Intentionally" means that a movant is not culpable merely for making a
20 conscious choice not to answer. *Id.* (*quoting TCI*, 244 F.3d at 697). Instead, to treat a failure to
21 answer as culpable, the movant must act with bad faith, such as with "'an intention to take advantage
22 of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal
23 process.'" *Id.* (*quoting TCI Group*, 244 F.3d at 697). For that reason, the Ninth Circuit has
24 "'typically held that a defendant's conduct was culpable for purposes of the [good cause] factors
25 where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad
26 faith failure to respond.'" *Id.* (*quoting TCI Group*, 244 F.3d at 698). By contrast, a defendant's mere
27 negligent failure to file an answer is insufficient to establish culpability under this factor. *TCI
28 Group*, 244 F.3d at 697.

ORDER (C 10-01786 LB)                                     3

1   Here, Defendants contend that their failure to respond to the Complaint was due to excusable
2   neglect, mistake, and surprise stemming from "an extraordinary confluence of circumstances."
3   Defendants' Motion, ECF No. 29 at 6.

4   Defense counsel suggests that he was confused around the time of service. Counsel advised
5   Plaintiff that he could accept service for all Defendants. At around this time, Mr. Kaufman, Andrew
6   Meisel, and Irvin Laxineta were engaged in settlement negotiations. Defense counsel learned about
7   service on the corporate defendants in early May but knew Plaintiffs had not served Mr. Kaufman.
8   He assumed – in part based on a conversation during an investor briefing – that was intentional
9   based on the settlement discussions and that he did not need to respond. He learned about service on
10  Mr. Kaufman only when Plantiff's counsel wrote him on May 25, 2010, warning that the answer was
11  due soon. *Id*. at 3; Declaration of Paul H. Hittelman, ECF No. 30 at 3, ¶ 6, ¶¶ 4, 8-10.[2] Defense
12  counsel then asked for a brief extension of time to file his answer, but Plaintiff refused. Defendants'
13  Motion, ECF No. 29 at 3; Hittelman Declaration at ¶¶ 11-16. A further brief delay resulted from
14  defense counsel's efforts to confirm his admission to practice in the Northern District. Defendants'
15  Motion, ECF No. 29 at 4; Hittelman Declaration, ¶ 19.

16  Plaintiffs counter that Defendants cannot dispute that service was proper. Plaintiffs' Opposition,
17  ECF No. 36 at 12. They also argue that, even accepting defense counsel's statement that he did not
18  learn about the filing of the lawsuit until May 25, 2010, Defendants ignored the lawsuit by not
19  notifying defense counsel that they had been served. *Id*. at 13. Defense counsel also did not ask the
20  Court for an extension to file the answer. *Id*. Plaintiffs assert that this conduct establishes that
21  "Defendants made a conscious, culpable decision to ignore the seriousness and urgency of the matter
22  before them," and that the failure to respond thus was willful and intentional, not the result of
23  excusable neglect, surprise, or mistake. *Id*. Plaintiffs also dispute defense counsel's assertion that
24  he agreed to accept service of process. *Id*. at 14. They understood that agreement to hinge on the
25  condition that Plaintiffs file suit in Los Angeles. *Id*. They also dispute that there were grounds for
26  assuming that Plaintiffs would delay filing the suit, asserting instead that they repeatedly advised
27  defense counsel that unless the parties settled, they would file the suit. *Id*. at 15.

---

[2] The Court overrules Plaintiffs' objection to ¶ 9 of the Hittelman Declaration.

1    Based on the facts and documents in the declarations, the Court finds that Defendants have
2    demonstrated that their failure to file an answer was unintentional, even though service was proper,
3    and even though defense counsel knew the filing date and could have sought an extension from the
4    Court. The facts suggest poor communication between defendants (and their registered agents) and
5    defense counsel. Also, the better course was to seek an extension. But nothing shows that the
6    failure to respond was devious, deliberate, willful, or done in bad faith. *See Mesle*, No. 09-55353,
7    slip op. at 11221 (*quoting TCI Group*, 244 F.3d at 697). Moreover, Defendants filed the motion here
8    fewer than three weeks after the entry of default, which refutes any suggestion that they
9    unreasonably delayed seeking relief. Accordingly, the Court finds that Defendants' conduct was not
10   culpable. *See id.* at 11219.

**B.  Meritorious Defense**

Under the second factor, a defendant seeking to vacate entry of default must allege specific facts that, if true, that would constitute a defense. *See id.* at 11224 (*citing TCI Group*, 244 F.3d at 700). The burden on the defendant is "not extraordinarily heavy." *Id*. (*citing TCI Group*, 244 F.3d at 700). That being said, a mere general denial without facts to support it is insufficient to justify vacating an entry of default. *Franchise Holdings II* , 375 F.3d at 926.

It is difficult to evaluate the merits of the claims here, but there is a dispute about the material facts. For example, Plaintiffs allege a scheme to obtain money by lies in violation of securities law, RICO, and state contract and tort laws. Defendants dispute that certain statements – like whether Mr. Kaufman was a licensed real estate broker – were lies (as opposed to an inadvertent statement in certain writings) or material. *See* Proposed Answer, ECF No. 26, ¶ 6. Plaintiffs also allege as an integral part of the scheme that Defendants violated specific provisions of operating agreements for the LLCs and limited partnerships by – among other things – obtaining loans, failing to keep separate books and records, commingling funds, and using money intended for investments. *See, e.g.*, Complaint, ECF 1 at 9, ¶ 32-39, 122-23. Defendants dispute those facts, arguing among other things the following:  (a) reasonable minds can differ as to whether the agreements impose these obligations; (b) transactions were reported on the appropriate books; (c) transactions and accountings were fully disclosed; (d) allegedly improper transactions in fact are attributable to fully-

1   disclosed rollovers; and (e) Plaintiffs characterized good-faith transactions taken years ago as
2   violations in order to take over the business once the real property investments started losing money.
3   Defendants' Motion, ECF No. 29, at 5. Defendants also dispute the characterization of the business
4   as a fraud, asserting instead that it was profitable from 1997 to 2007 and lost money only when a
5   declining real estate market affected the investments (commercial properties and multiple dwelling
6   projects). *Id.*

7   Defendants also mount defenses to the charges. For example, they assert that the securities were
8   exempt under the Securities Exchange Act of 1934. *Id.,* Affirmative Defense ¶ 8. Estoppel is
9   another defense. *Id.*, ¶ 6.

10  In sum, a plain reading of the complaint and the answer show fact challenges to Plaintiff's fraud
11  and contract claims. In addition, Defendants have complete affirmative defenses.

## C.  Prejudice to Plaintiff

The final factor examines whether setting aside the default prejudices the Plaintiff. Prejudice is more than "simply delaying the resolution of a case. Instead, the standard is whether [the plaintiff's] ability to pursue his claim will be hindered." *TCI Group*, 244 F.3d at 701 (internal quotations omitted). "[T]he delay must result in tangible harm such as a loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id*. By contrast, merely requiring a plaintiff to litigate the merits of a case is not prejudice under this third prong. *Id*. As the Ninth Circuit explains, "A default judgment gives the plaintiff something of a windfall by sparing her from litigating the merits of her claim because of her opponent's failure to respond; vacating the default judgment merely restores the parties to an even footing in the litigation." *Id*.

The record does not establish that the brief delay here caused the Plaintiffs any prejudice.

## D. SUSPENDED CORPORATE STATUS

According to both parties, the corporate status of Mark Alan Kaufman Properties, Inc., and Mark Kaufman Properties, Inc., which are both California corporations, is suspended. *See* Complaint, ECF No. 1, ¶¶ 18-19. Plaintiffs argue that these corporations cannot move to set aside the default because suspended corporations may not defend an action. Plaintiffs' Opposition, ECF No. 36 at 11.

The corporations' capacity to be sued is determined under California law. Fed. R. Civ. P. 17(b). California law permits a plaintiff to sue a suspended corporation and obtain a default judgment if it fails to respond. Cal. Code of Civ. Proc. §§ 416.10, 416.20; *Grell v. Laci Le Beau Corp.*, 73 Cal. App. 4th 1300, 1306 (1999). To the extent that suspended status prevents a corporation from defending itself (or seeking relief from the default), California law liberally allows a corporation to reinstate its status before final judgment and defend an action. *See, e.g., United States v. 2.61 Acres of Land*, 791 F.2d 666, 668 (9th Cir. 1985); *Schwartz v. Magyar House, Inc.*, 168 Cal. App. 2d. 182, 190 (1959) (allowed continuance to permit corporation to reinstate itself). At oral argument, Defendants said that they were in the process of reinstating corporate status and expected to accomplish this in ten days. That moots the issue.

## IV.  CONCLUSION

The Court **GRANTS** Defendants' Motion to Vacate and Set Aside Entry of Defaults. ECF No. 29. The Defendants shall e-file their answer, now lodged at ECF No. 26, by August 12, 2010. In addition, the Court orders the parties to comply with the requirements of the "Order Setting Initial Case Management Conference" (ECF No. 3) on the following revised schedule:

| | |
|---|---|
| August 18, 2010: | Meet and confer and ADR procedures |
| September 16, 2010: | Rule 26(f) disclosures and joint report/case management statement |
| September 23, 2010: | Initial Case Management Conference at 1:30 |

**IT IS SO ORDERED.**

Dated: August 6, 2010

_____
LAUREL BEELER
United States Magistrate Judge

ORDER (C 10-01786 LB)                    7